**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

CARRIE ELIZABETH TIINGLE,       :

     Plaintiff,                  :

vs.                           :     CA 17-0228-MU

NANCY A. BERRYHILL,         :
Acting Commissioner of Social Security,
                                 :

     Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 21 & 22 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the February 21, 2018 hearing before the Court (conducted by telephone), it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1]    Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 21 & 22 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

# I. Procedural Background

Plaintiff filed an application for a period of disability and disability insurance benefits on July 29, 2014, alleging disability beginning on March 15, 2014. (*See* Tr. 125-28.) Tingle's claim was initially denied on September 18, 2014 (Tr. 58) and, following Plaintiff's October 8, 2014 request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 78-79), a hearing was conducted before an ALJ on March 28, 2016 (Tr. 33-57). On May 23, 2016, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to disability insurance benefits. (Tr. 20-28.) More specifically, the ALJ proceeded to the fourth step of the five-step sequential evaluation process and determined that Tingle retains the residual functional capacity to perform light work and her past relevant work as an accounting clerk, receptionist, scheduler, teleworker, and general office assistant (Tr. 27-28). On June 6, 2016, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (Tr. 14); the Appeals Council denied Tingle's request for review on April 14, 2017 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to degenerative disc disease, arthritic knees, left leg sciatic nerve impingement, meniscus tear in the right knee, post-surgery, and obesity. The Administrative Law Judge (ALJ) made the following relevant findings:

> **3.     The claimant has the following severe impairments: degenerative disc disease ("DDD"); arthritic knees; left leg sciatic nerve impingement; meniscus tear in her right knee, post-surgery; and obesity (20 CFR 404.1520(c)).**
>
> .     .     .
>
> **4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the**

**listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

.        .        .

**5.        After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can only: occasionally climb ramps and stairs; never climb ladders, r[ope]s or scaffolding; and she can only occasionally stoop, kneel, crouch, or crawl.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

The claimant testified she has chronic back pain that limits her ability to focus, sit, or stand for any length of time. She takes prescription pain medicine to manage her pain symptoms. She described drowsiness as a side effect of her medicine. She testified to having spinal blocks for her DDD, but by the third attempt, she described her pain increasing, not getting better. Her pain goes over a nine on a ten-point pain scale.

She testified to bad arthritis in both her knees and described having additional problems with her right knee due to a surgery that was required after she tore her right knee meniscus. Her left leg pain is exacerbated by sciatica.

She testified she could sit, stand, or walk for 15 minutes. She alleges that she cannot pick up more than five pounds. She is able to do her own grocery shopping and personal errands. She drives twice a week to grocery shop or visit her parents. She can climb stairs, but slowly. She can bend over and pick something up off the ground, but she testified she could not stoop or crouch. She does not have difficulties using her hands and fingers. She takes care of her own personal needs without assistance, including doing housework such as sweeping, mopping, or vacuuming, but did testify that these activities now take longer than these activities took before her alleged onset date. She testified she walks her dog for light exercise and described a busy day of chores and cooking throughout her day.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

In terms of the claimant's alleged symptoms, the objective medical records are not entire[ly] consistent with her testimony. A Magnetic Resonance Imaging Exam ("MRI") on June 7, 2013, only found mild DDD, with small lumbar tears and no stenosis or neural impingement. Four months of frequent chiropractic treatment from January through April of 2014, resulted in her reporting feeling better with reduced pain in her back.

Despite reporting little pain to no pain at her successful chiropractic appointments in April of 2014, she had three surgical lumbar steroidal block injections on April 30, May 7 & 14 of 2014. When examined on May 24, 2014, at DCH Physical Rehabilitation [C]linic, she reported back pain of a ten on a ten-point scale. However, when she was physically manipulated by the physical therapist, she had a normal spine inspection with no pain and a regular range of motion. Her straight leg raise test was negative bilaterally. Her hip exam found no pain and a normal range of motion. Her knees had a normal range of motion and function bilaterally. Her DDD is medically determinable due to her MRI on April 24, 2014, that showed moderate facet degeneration in her lumbar [spine]. However, the DDD does not cause any neural impingement. She did do physical therapy, but on July 7, 2014, was discharged without showing improvement to her subjective pain reports.

West Alabama Neurosurgery examined the claimant and her medical records and strongly recommended that the claimant not have surgery on her back. They only prescribed Gabapentin and recommended conservative medical therapy citing her back pain was only "mild" upon manipulation.

On March 10, 2015, her examination with her longtime treating physician, Larry Skelton, M.D., resulted in her back pain and sciatica being treated with Naprosyn, Amoxicillin, and Ed A-Hist. This is not the intensity or frequency of treatment that would be consistent with Dr. Skelton's opinion discussed below, nor is it consistent with the claimant's testimony.

As for her knee impairment, the objective evidence is not consistent with finding her more limited than described in the residual functional capacity above. She had a successful knee surgery on August 6, 2015. When examined September 8, 2015, post-surgery, she only described her pain as a one on a ten-point scale. Her examination found her to walk with a normal gait and the claimant is reported to have said "she is doing very well." The medical records contained objective radiology[,] such as an MRI[,] that shows her knee impairment is medically determinable, but the treatment notes reflect that home strengthen[ing] exercises were all the further treatment she required. Reporting pain as a four on a ten-point scale, she received a follow-up injection in her knee on February 16, 2016. Afterwards, William Standeffer, M.D., her treating doctor[,] said she could return to regular activities.

The undersigned has considered the opinions provided by both medically acceptable sources and other sources. This opinion evidence was analyzed in accordance with the regulations and agency rulings. In evaluating medical opinions, the undersigned granted weight according to the appropriate factors, which included the following: the type of relationship (e.g., treating, non-treating, and non-examining) between the claimant and an acceptable medical source; the degree to which an opinion was supported by an explanation and relevant evidence, particularly medical signs and laboratory findings; the consistency of the opinion with the record as a whole; how long the source has known and how frequently the source has seen the claimant; whether the source has a specialty or area of expertise related to the medical issues involved; the amount of understanding the source has about our disability programs and their evidentiary requirements; and the extent to which the source is familiar with the medical and other evidence in the case record.

On September 11, 2014, Stuart Stephenson, M.D., examined the claimant's file on behalf of the State agency and conducted a physical residual functional capacity assessment. He opined that the claimant

could do light exertional work except she would be further limited in her postural abilities in that she could only occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch, or crawl. He opined the claimant would not have further limitations. The undersigned gives great weight to the opinion of Dr. Stephenson. Although he did not examine the claimant, he is trained in evaluating Social Security disability claims, reviewed the evidence that was made available to him, and made reasonable, well-supported conclusions based on that evidence. The opinions are generally consistent with the objective medical findings that document [] the claimant's residual impairments.

On September 18, 2014, Robert Estock, M.D., reviewed the file on behalf of the State agency at the initial consideration, performed a psychiatric review technique, and opined that the claimant does not have a medically determinable mental health issue. The claimant has not made mental health allegations, nor does a diagnosis of such appear in the medical records discussed above. The undersigned gives great weight to Dr. Estock's opinion that the claimant does not have a mental health impairment.

On November 3, 2015, Dr. Skelton filled out a form making a medical source statement. He had seen the claimant two to four times per year as a treating physician and did confirm her diagnosis of DDD and osteoarthritis. He opined that the claimant would be off task 25% or more and described limiting postural abilities. He went on to opine that the claimant would miss four days of work per month. The undersigned gives this opinion little weight. If the claimant were as disabled as describe[d] by Dr. Skelton, she would need much more treatment th[a]n two to four times per year. He acknowledges she had only a single series of three injections in her back and only conservative physical therapy and pain medicine. A claimant as disabled as he opines would require far greater intensity and frequency of treatment. His own treatment notes do not say anything about the claimant needing to be off task or missing work.

In sum, the above residual functional capacity assessment is supported by medical evidence and opinions that demonstrate the claimant is limited to light exertional work. She is further limited by her DDD, arthritic knees, and leg impairments to the postural limits described above.

**6. The claimant is capable of performing past relevant work as an Accounting Clerk, Receptionist, Scheduler, Teleworker, and a General Office Assistant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**

The vocational expert testified that the claimant has past work as:

| Job Title | DOT# | Exertional Level | Skill Level |
|---|---|---|---|
| Accounting Clerk | 216.482-010 | Sedentary | Skilled SVP 5 |
| Receptionist | 237.367-038 | Sedentary | Semi-skilled SVP 4 |
| Scheduler | 205.362-018 | Sedentary | Semi-skilled SVP 4 |
| Telemarketer | 299.357-014 | Sedentary | Semi-skilled SVP 3 |
| General Office Assistant | 209.562-010 | Light | Semi-skilled SVP 3 |
| Quality Control Worker | 750.367-010 | Light | Semi-skilled SVP 4 |

In order to be considered past relevant work, a job must have been performed within the past fifteen years, lasted long enough for the individual to learn how to do the job, and been substantial gainful activity. The claimant completed a Work History Report and testified that she worked in these positions during the last fifteen years. Based on the vocational expert's testimony and the claimant's Work History Report, as referenced above, the time the claimant spent working at these positions meets the duration requirements. Finally, the claimant's earnings record shows that the claimant worked in the jobs at the level of presumptive substantial gainful activity as defined by our Regulations for the required duration. Because all three requirements have been satisfied, the undersigned therefore considers the claimant's past work to be past relevant work.

Upon questioning by the undersigned, the vocational expert testified that if an individual had the claimant's residual functional capacity, such an individual could perform the claimant's past relevant work. The vocational expert is well educated, trained, and experienced to offer testimony on these issues. Therefore, the undersigned finds that the claimant could perform her past relevant work as generally and actually performed. Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT).

**7.     The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2014, through the date of this decision (20 CFR 404.1520(f)).**

(Tr. 22, 23 & 24-28 (internal citations omitted; emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past relevant work as an accounting clerk, receptionist, scheduler, teleworker, and general office assistant, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Tingle asserts two reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1)

---

[3]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

the ALJ erred in rejecting her subjective complaints of pain based on her failure to seek additional treatment; and (2) the ALJ accorded improper weight to two non-examining physicians and failed to give proper weight to the opinion of her treating physician, Dr. Larry Skelton.

A. **Plaintiff's Subjective Pain Complaints**. The Eleventh Circuit has consistently and often set forth the criteria for establishing disability based on testimony about pain and other symptoms. *See, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991).

> [T]he claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.[4] If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson, supra,* at 1225 (internal citations omitted; footnote added).

In this case, the ALJ clearly recognized that plaintiff's impairments could reasonably be expected to give rise to pain (*see* Tr. 25 ("[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]")) yet found that her subjective pain complaints were not entirely credible (*id*. ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical

---

[4]    "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw a reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." SSR 88-13.

evidence and other evidence in the record for the reasons explained in this decision.")).

According to Plaintiff, the ALJ's sole basis for rejecting her pain testimony is the same as that given to reject Dr. Skelton's medical source statement, namely the following: "If the claimant were as disabled as describe[d] by Dr. Skelton, she would need much more treatment th[a]n two to four times per year. . . . A claimant as disabled as he opines would require far greater intensity and frequency of treatment." (Tr. 27; *compare id. with* Doc. 11, at 10.) Tingle contends that this statement does not constitute a reasonable basis for rejecting her testimony (and, therefore, her pain testimony must be accepted as true) because the ALJ did not "indicate what additional treatment she would recommend for Tingle in her decision or how more frequent trips to the doctor would alleviate her symptoms." (Doc. 11, at 10.)

Initially, this Court cannot agree with Plaintiff that the only reason offered by the ALJ for rejecting Plaintiff's pain testimony was the infrequency of her visits to Dr. Skelton because the ALJ made a point of delineating how Tingle's subjective pain testimony was not consistent with the medical evidence and other evidence in the record. (*See* Tr. 25 & 26.) To this end, the ALJ described at some length Plaintiff's daily activities (Tr. 25 ("She is able to do her own grocery shopping and personal errands. She drives twice a week to grocery shop or visit her parents. She can climb stairs, but slowly. She can bend over and pick something up off the ground, but she testified she could not stoop or crouch. She does not have difficulties using her hands and fingers. She takes care of her own personal needs without assistance, including doing housework such as sweeping, mopping, or vacuuming, but did testify that these activities now take longer than these activities took before her alleged onset date. She

testified she walks her dog for light exercise[5] and described a busy day of chores[6] and cooking throughout her day." (footnotes added))); noted MRI findings showing degenerative disc disease but no neural impingement (*compare* Tr. 25 *with* Tr. 206 & 208 (MRIs of the lumbar spine on June 7, 2013, and again on April 23, 2014, reveal no neural impingement)); noted four months of successful chiropractic treatment from January through April of 2014 (*compare* Tr. 25 *with* Tr. 379-87), so much so that by April of 2014 (and even March of 2014) she was reporting "little pain to no pain" (*compare* Tr. 25 *with* Tr. 386 (on March 10, 2014, Tingle reported mild pain in the lower back, "mostly a dull ache") and Tr. 387 (on April 21, 2014, Tingle described her lumbar and lumbosacral discomfort as "dull, aching, mild and comes and foes. Pain is mostly on right side. The pain remains localized to her low back, right sacroiliac and right buttock[.]")); noted that despite this successful chiropractic treatment, Plaintiff underwent three lumbar steroidal block injections on April 30, 2014, and May 7 & 14, 2014 (*compare* Tr. 25 *with* Tr. 337-73 (series of injections)), which she claimed did not work (*see, e.g.,* Tr. 260 (physical therapy evaluation reflects the Plaintiff's statement that the lumbar injections actually increased her pain)) but by the time she saw Dr. Bryan S. Givhan at West Alabama Neurosurgery on July 14, 2014 her back exam

---

[5]     In a Function Report completed by Tingle on August 3, 2014, the claimant reported that her pets are a primary interest (Tr. 157) and that she feeds, waters, grooms, walks and bathes her pets (Tr. 154).

[6]     Also in the Function Report, Tingle described that she would operate a riding lawn mower once a week for 45 minutes, wash dishes three times daily, and make beds daily. (*See* Tr. 155.) In addition, Tingle listed her hobbies as being her pets, reading, counted cross stitch, television and the computer. (*Id.* at 157.) Finally, Tingle reported that she can pay attention for hours, follow written and oral instructions, gets along well with authority figures, and does not utilize any assistive devices. (*Id.* at 158 & 159.)

produced only mild pain to palpation and mild pain with extension and flexion maneuvers (*compare* Tr. 26 *with* Tr. 217), the consulting physician recommending only conservative medical therapy and surgery as an absolute last resort if conservative treatment did not work (*id.*); noted that on March 10, 2015, Plaintiff's treating physician, Dr. Skelton, treated her impairments—diagnosed as low back pain (primary), idiopathic scoliosis, sciatica, osteoarthritis, Baker's cyst of the knee, and sinusitis—only with Naprosyn,[7] Amoxicillin, and Ed A-Hist, treatment not of the intensity that would be consistent with Tingle's complaints of pain (*compare* Tr. 26 *with* Tr. 273-75);[8] and reviewed the evidence related to Tingle's right knee, noting that right after meniscus surgery, she reported pain of only 1 on a 10-point scale and though that pain increased to a 4 on one occasion, requiring an injection, her knee surgeon said she could return to her regular activities (*compare* Tr. 26 *with* Tr. 288-307 & 310-11).

---

[7]     Naprosyn is a nonsteroidal anti-inflammatory drug used to treat pain caused by conditions such as osteoarthritis. *See* https://www.drugs.com/naprosyn.html (last visited, February 26, 2018, at 5:05 p.m.). Indeed, none of the drugs Plaintiff was taking at this time were narcotic pain medicines, like Lortab or Norco, which are indicated for the relief of moderate to severe pain, *compare* https://www.drugs.com/lortab.html (last visited, February 26, 2018, at 5:06 p.m.) (noting Lortab is an opioid pain medication used to relieve moderate to severe pain) *with* https://www.drugs.com/norco.html (last visited, February 26, 2018, at 5:07 p.m.) (noting Norco is an opioid pain medication used to relieve moderate to moderately severe pain).

[8]     Indeed, a review of Dr. Skelton's office notes on that date (March 10, 2015) reflect that Tingle made no low back complaints but, instead, only complained of moderate pain in her right knee (and about her sinuses) (Tr. 273). Moreover, Dr. Skelton noted, on physical examination, that Plaintiff was in no acute distress (Tr. 274), consistent with every prior physical examination performed by the treating physician (*see, e.g.,* Tr. 240 (no acute distress on examination on June 6, 2013); Tr. 243 (no acute distress on examination on July 8, 2014); Tr. 245 (no acute distress on examination on April 23, 2014) & Tr. 248 (no acute distress on examination on July 24, 2014)), and conducted no examination of Tingle's low back (*see* Tr. 274 ("MUSCULOSKELETAL: Baker's cyst, valgus deformity and warm to touch right knee.")).

In light of the foregoing, it is clear that the ALJ was not simply relying on the infrequency of treatment by Dr. Skelton to reject Plaintiff's subjective pain allegations[9] but, as well, clearly found that Tingle's reported levels of disabling pain conflicted with other evidence in the record, including, the breath of her activities of daily living, the absence of neural impingement, the absence of narcotic pain medication, evidence in the record from a consulting neurosurgeon (a few months following a series of 3 lumbar blocks) that examination of the back revealed only mild pain to palpation and mild pain with extension and flexion maneuvers, conservative treatment thereafter (that is, after the neurosurgeon's consult) by the treating physician, Dr. Skelton, and evidence in the record relative to Plaintiff's knee that the pain experienced after knee surgery never exceeded a "4" on a 10-point scale. Given that substantial evidence in the record supports the ALJ's determination that Tingle's reported levels of disabling pain conflicted with other evidence (including medical evidence) in the record, Plaintiff's first assignment of error is **OVERRULED**.

**B.    Opinions of Non-Examiners versus the Opinion of the Treating Physician, Dr. Larry Skelton**. "Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Security,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In general, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more

---

[9]    The infrequency of visits to the treating physician was certainly a relevant consideration in evaluating Plaintiff's subjective allegations of pain. *See Loveless v. Commissioner, Soc. Sec. Admin.,* 678 Fed.Appx. 866, 870 (11th Cir. Feb. 1, 2017) (finding that the ALJ properly considered the relative infrequency of visits to both treating physicians in making credibility determination).

weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Social Security Administration,* 164 Fed.Appx. 919, 923 (11th Cir. Jan. 31, 2006). In assessing the medical evidence, "[t]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor[,]" *Romeo v. Commissioner of Social Security,* 2017 WL 1430964, *1 (11th Cir. Apr. 24, 2017) (citing *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1179 (11th Cir. 2011)), and the ALJ's stated reasons must be legitimate and supported by the record, *see Tavarez v. Commissioner of Social Security,* 638 Fed.Appx. 841, 847 (11th Cir. Jan. 7, 2016) (finding that the "ALJ did not express a legitimate reason supported by the record for giving [the consulting physician's] assessment little weight."); *compare id. with Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished) (recognizing that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'"). Accordingly, it bears noting that "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips, supra,* 357 F.3d at 1240 (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those

reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

In this case, Plaintiff contends that the ALJ committed reversible error in failing to accord the opinion of the treating physician, Dr. Larry Skelton, sufficient weight and by affording too much weight to the opinions of two non-examining physicians[10]. (*See* Doc. 11, at 11-14.) With respect to the former argument, it is Plaintiff's position that the ALJ did not establish good cause for giving Dr. Skelton's opinion little weight. (*See id.* at 13.)

Turning first to Dr. Skelton's medical source statement, completed on November 3, 2015 (*see* Tr. 265-67),[11] the ALJ evaluated the treating physician's opinion in the following manner:

On November 3, 2015, Dr. Skelton filled out a form making a medical source statement. He had seen the claimant two to four times per year as

---

[10]    While Plaintiff generally references two non-examining physicians (Doc. 11, at 11), he later makes specific mention of only non-examiner Dr. Robert Estock (*see id.* at 12). In reviewing the record, it appears to the Court that Plaintiff's arguments are actually "directed" primarily to non-examiner Dr. Stuart X. Stephenson, who appears to have "completed" a physical capacities assessment with respect to Plaintiff (*see* Tr. 65-67; *compare id. with* Tr. 26 (ALJ's reference to Dr. Stephenson's physical RFC assessment)), as opposed to Dr. Estock, who completed an evaluation of Plaintiff's mental impairments (*see id.* at 63-64; *compare id. with* Tr. 27 (ALJ notes Dr. Estock found no severe mental impairment)). Since Plaintiff makes no argument that she is mentally incapable of performing her past relevant work, it is clear to the Court that Plaintiff is actually "attacking" the weight afforded Dr. Stephenson's physical residual functional capacity determination (*see* Doc. 11, at 11-14).

[11]    The medical source statement completed by Dr. Skelton not only reflects the treating physician's opinion that Plaintiff would be off task for 25% or more on a typical workday (Tr. 266) but also that she can sit for less than 2 hours out of an 8-hour workday, and stand/walk less than 2 hours out of an 8-hour workday, can rarely lift and carry up to 10 pounds, never lift and carry up to 20 pounds, can only walk ½ block or less without rest or severe pain, will need to take unscheduled breaks about every 15 minutes, can never twist, stoop, crouch, or climb stairs or ladders, and will miss more than four days per month as a result of her impairments/treatment (*id.* at 266-67).

a treating physician and did confirm her diagnosis of DDD and osteoarthritis. He opined that the claimant would be off task 25% or more and described limiting postural abilities. He went on to opine that the claimant would miss four days of work per month. The undersigned gives this opinion little weight. If the claimant were as disabled as describe[d] by Dr. Skelton, she would need much more treatment th[a]n two to four times per year. He acknowledges she had only a single series of three injections in her back and only conservative physical therapy and pain medicine. A claimant as disabled as he opines would require far greater intensity and frequency of treatment. His own treatment notes do not say anything about the claimant needing to be off task or missing work.

(Tr. 27.)

The Court concludes that the reasons given by the ALJ for assigning Dr. Skelton's medical source statement little weight—including infrequent treatment visits, a conservative course of treatment, and inconsistency between the statement and the treating physician's own clinical records—"are all valid reasons for failing to give a treating physician's opinion controlling weight." *Jones v. Colvin,* 2013 WL 1909485, *3 (N.D. Ala. May 6, 2013) (citations omitted). Or, stated differently, Dr. Skelton's opinion "was not supported by his own treatment notes given [Tingle's] conservative and relatively infrequent treatment." *Womble v. Commissioner of Soc. Sec.,* 705 Fed.Appx. 923, 927 (11th Cir. Aug. 30, 2017). As the record reflects, prior to rendering his medical source statement opinion on November 3, 2015, Dr. Skelton had treated Plaintiff for her back impairments once in 2013 (Tr. 239-42), three times in 2014 (Tr. 243-49), and three times in 2015 (Tr. 270-75 & 283-84), including on the date Dr. Skelton rendered his opinion (*id.* at 283-84). And, indeed, on that date, when Dr. Skelton opined that Tingle was so disabled that she could not even perform sedentary work (*see* Tr. 265-67), the treating physician's office notes indicate that Plaintiff had no musculoskeletal or neurological complaints (Tr. 284) and Dr. Skelton performed no physical examination,

though he did note Plaintiff was in no acute distress and was to follow-up only as needed (*id.*). Interestingly, Dr. Skelton's comment on November 3, 2015, that Plaintiff was in no acute distress mirrors the treating physician's observations on each and every prior clinical visit Tingle made to him (*compare id. with* Tr. 240, 244, 245, 248, 271 & 274)[12] and his office notes from 2015 are noteworthy because they contain absolutely no "positive" clinical findings relative to Plaintiff's back impairments (*compare* Tr. 283-84 *with* Tr. 270-75).[13] And, of course, as the ALJ specifically pointed out (Tr. 27), Dr. Skelton's office notes contain not even the slightest intimation—most particularly in 2015 when the treating physician's opinion was rendered—that Tingle's back impairments, and resulting pain, were of such severity that she would be off task for 25% or more of each workday and that she would miss more than four days a month because of pain in her low back and legs (*see* Tr. 239-42, 243-49, 270-75 & 283-84). Thus, Dr. Skelton's opinion regarding Tingle's limitations is not supported by his own treatment notes.

The ALJ's decision to give little weight to Dr. Skelton's medical source statement opinion is also supported by other evidence in the record. Despite concluding that Tingle was disabled and could sit for less than two hours and stand/walk for less than two hours in an eight-hour workday, with only rare lifting of up to ten pounds, Plaintiff was conservatively treated with chiropractic adjustments, physical therapy, medication

---

[12]    Dr. Skelton's repeated notations that Plaintiff presented to his office in no acute distress severely undermines not only his statement on November 3, 2015 that Plaintiff suffers from "[s]evere pain" (*see* Tr. 267) but, as well, undermines Plaintiff's hearing testimony that her pain level never goes lower than a 7½ on a 10-point scale (*see* Tr. 49).

[13]    In other words, there are no medical signs memorialized by Dr. Skelton on November 3, 2015 that support his medical source statement opinion.

and steroid blocks, but no back surgery. And, indeed, the record reflects that the treatment she received at the chiropractor's office actually reduced her pain.

In light of the foregoing, the undersigned finds that good cause existed for discounting the opinion of Dr. Skelton and, therefore, substantial evidence supports the ALJ's decision to assign the treating physician's opinion little weight. *See Hunter v. Social Sec. Admin., Commissioner,* 808 F.3d 818, 823 (11th Cir. 2015) ("We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."), *cert. denied,* ___ U.S. ___, 136 S.Ct. 2487, 195 L.Ed.2d 823 (2016).

This Court also finds that the ALJ properly weighed the opinions of the State agency medical consultants, Dr. Stuart X. Stephenson and Dr. Robert Estock. Although Dr. Stuart and Dr. Estock reviewed the evidence in September of 2014, the ALJ considered their opinions along with subsequent evidence, as indicated by her reference to Dr. Skelton's treatment notes in March of 2015 and Dr. William Standeffer's treatment notes in 2015 and 2016 (Tr. 26), and properly determined that Dr. Stephenson's residual functional capacity assessment was consistent with the medical evidence of record, as was Dr. Estock's determination that Plaintiff does not have a severe mental impairment (*compare* Tr. 26-27 *with* Tr. 62-67).[14] As noted by the ALJ

---

[14] And while Plaintiff points out that the non-examining physicians did not have before them Dr. Skelton's office notes from 2015, including his medical source statement, and treatment records from University Orthopaedic Clinic and Spine Center, and the Spine Care Center (Doc. 11, at 12), as aforesaid, the ALJ specifically considered Dr. Skelton's office notes from March of 2015 (and appropriately rejected Dr. Skelton's medical source statement opinion from November of 2015) and the treatment records from University Orthopaedic Clinic and Spine Center, along with the opinions of the non-examining physicians, in concluding Plaintiff is capable of performing her past relevant work (both light and sedentary jobs). The undersigned finds no error in this regard, particularly since the Plaintiff does not establish how the 2015 office
(Continued)

(Tr. 26), and as the Eleventh Circuit has recently reiterated, "the regulations provide that non-examining sources may offer opinion evidence and that State agency medical consultants are highly qualified and considered experts in Social Security disability evaluations." *Banks for Hunter v. Commissioner, Soc. Sec. Admin.,* 2017 WL 1420239, *3 (11th Cir. Apr. 21, 2017) (state agency consultants entitled to weight) (citation omitted); *compare id. with, e.g.,* 20 C.F.R. §§ 404.1513a(b)(1) & 404.1527(e). Because this Court has no reason to question the qualifications or expertise of Drs. Stephenson and Estock,[15] and the ALJ properly accorded Dr. Skelton's opinion little weight, this Court cannot find that the ALJ erred in according the opinions of the reviewing physicians great weight, particularly since the evidence of record supports these opinions (*see generally* Tr. 206-09, 216-17, 219-31, 239-63 & 270-387). Therefore, Plaintiff's second assignment of error is **OVERRULED**.

Because the Plaintiff raises no other assignments of error, the Court finds that the Commissioner's fourth-step determination is due to be affirmed, *compare Land v.*

_____

records of her treating physician and the office records from Dr. Standeffer establish that her limitations are greater than the limitations found by the ALJ. Indeed, as previously intimated, Dr. Skelton's office notes from 2015 make little or no mention of Plaintiff's back impairments (other than by way of diagnosis) and certainly do not support the treating physician's medical source statement opinion; instead, those office notes overwhelmingly serve to underscore the propriety of the ALJ's RFC determination. In addition, Dr. Standeffer's office notes do not establish limitations greater than those determined by the ALJ inasmuch as after Dr. Standeffer performed minimally-invasive knee surgery, Plaintiff's symptoms improved and she was told by Dr. Standeffer that she could return to her regular activities. And, finally, the daily activities admitted by Plaintiff during the hearing, and in the course of her communications with the Social Security Administration, are consistent with the ALJ's RFC determination, and not with Dr. Skelton's opinion that she cannot even perform sedentary work.

[15]  *Compare*  https://www.healthcare6.com/physician/birmingham-al/stuart-x-stephenson (reflecting Stephenson to be an orthopedic surgeon) (last visited, February 27, 2018, at  8:44 a.m.) *with* http://www.drscore.com/Alabama/Psychiatry/search/Robert-Estock (reflecting Estock practices psychiatry in Birmingham) (last visited, February 27, 2018, at  8:44 a.m.).

*Commissioner of Social Security,* 494 Fed.Appx. 47, 49 & 50 (11th Cir. Oct. 26, 2012) ("[S]tep four assesses the claimant's RFC to determine whether the claimant is capable of performing 'past relevant work.' . . . A claimant's RFC takes into account both physical and mental limitations. . . . Because more than a scintilla of evidence supported the ALJ's RFC assessment here, we will not second-guess the Commissioner's determination.") *with Phillips v. Barnhart,* 357 F.3d 1232, 1238-1239 (11th Cir. 2004) ("At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity []; and (2) the claimant's ability to return to [his] past relevant work. As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. Moreover, the ALJ will assess and make a finding about the claimant's residual functional capacity based on all the relevant medical and other evidence in the case. Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to [his] past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . If the claimant can return to [his] past relevant work, the ALJ will conclude that the claimant is not disabled. If the claimant cannot return to [his] past relevant work, the ALJ moves on to step 5." (internal citations, quotation marks, and brackets omitted; brackets added)), Plaintiff having failed to carry her ultimate burden of establishing that she is disabled.

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 29th day of March, 2018.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**